# EXHIBIT 2

SEPARATION AGREEMENT AND RELEASE

This Separation Agreement and Release (this "Agreement") is entered into as of September 6, 2023, by and between Nicholas Curwen (the "Employee") and District of Columbia International School ("School") (each of Employee and School, a "Party" and, collectively, the "Parties"). The Parties acknowledge that the terms and conditions of this Agreement have been voluntarily agreed to and are intended to be final and binding.

RECITALS

WHEREAS, Employee was previously employed by School;

WHEREAS, Employees employment ended effective as of Friday, August 18 2023; and  NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and for the monetary and other consideration set forth below, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

Section 1.          Separation from Employment.

(a)          Effective Date of Termination.  Employee and School agree that Employee's employment by School has terminated, effective as of the Separation Date, as dictated by the employee through his email on that date.  Employee and School understand and agree that from and after the date hereof the Employee is not authorized to incur any expenses, obligations or liabilities on behalf of School and that from and after the Separation Date, School has no obligation to pay or provide any benefit to Employee.

(b)          Separation Payment.  The School agrees, subject to the terms and conditions of this Agreement, including without limitation the agreement and obligation of the Employee to comply with each and every provision of this Agreement, to continue Employee's health insurance coverage through DCI's HMO Policy for three (3) months; that is through November 30, 2023, in lieu of a monetary compensation. The continuation of coverage shall become effective within thirty (30) days following the Separation Date (provided that the Employee has complied with the terms hereof).  The Employee expressly acknowledges and agrees that the Employee's right to receive and retain the Separation Payment is conditioned on its continued compliance with the terms of this Agreement and that Employee shall be required to return the Separation Payment to the School in the event of any non-compliance with any term of this Agreement by the Employee.  For avoidance of doubt, in the event that the School becomes entitled to the return of the Separation Payment, it may commence such legal action as it determines necessary and/or may deduct and/or setoff such amount from any payments otherwise owed by the School to the Employee for any reason.

Section 2.	Release of Claims.

(a)	Mutual Release of Claims.  In consideration of School's entering into this Agreement, the sufficiency of which Employee acknowledges, Employee, with the intention of binding himself and his heirs, executors, administrators and assigns, does hereby release, remise, acquit and forever discharge School and its present and former founders, officers, trustees, employees, agents, attorneys, employees and employee benefit plans (and the fiduciaries thereof) and the successors, predecessors and assigns of each of the foregoing (collectively, the "School Released Parties") of and from any and all claims, actions, causes of action, complaints, charges, demands, rights, damages, debts, sums of money, accounts, financial obligations, suits, expenses, attorneys' fees and liabilities of whatever kind or nature in law, equity or otherwise, whether accrued, absolute, contingent, unliquidated or otherwise and whether now known or unknown, suspected or unsuspected, which Employee, individually or as a member of a class, now has, owns or holds, or has at any time heretofore had, owned or held, arising on or prior to the date hereof, against any School Released Party, in any capacity, including, without limitation, any and all claims under statutory or common law, for severance or vacation benefits, unpaid wages, salary or incentive payments, for breach of contract, wrongful discharge, impairment of economic opportunity, defamation, intentional infliction of emotional harm or other tort, for any violation of applicable federal, state, and local labor and employment laws (including, without limitation, all laws concerning unlawful and unfair labor and employment practices) and for employment rights under any applicable federal, state or local statute, provision, order or regulation, and including, without limitation, any claim under Title VII of the Civil Rights Act of 1964 ("Title VII"), the Civil Rights Acts of 1866, the Civil Rights Protection Act of 1988, the Fair Labor Standards Act, the Rehabilitation Act, ("Rehab Act"), Americans with Disabilities Act (the "ADA"), the Family and Medical Leave Act ("FMLA") Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and any similar or analogous federal, state, or local statute, excepting only rights of Employee under this Agreement; and rights to indemnification Employee has under the by-laws or certificate of incorporation of School, including under any policy of insurance providing indemnification or coverage.

(b)	Effectiveness with Respect to all Claims. The releases of claims set forth in this Section 2 applies to any relief no matter how called, including, without limitation, wages, back pay, front pay, compensatory damages, liquidated damages, punitive damages, damages for pain or suffering, costs and attorneys' fees and expenses.

(c)	Specific Acknowledgements and Agreements of Employee.  Employee specifically acknowledges that his acceptance of the terms of the release of claims set forth in this Section 2 is, among other things, a specific waiver of his rights, claims and causes of action, if any, under Title VII, the Rehab Act, the FMLA, ERISA, the ADA and any state or local law or regulation in respect of discrimination, harassment, or retaliation of any kind; provided, however,

that nothing herein shall be deemed, nor does anything contained herein purport, to be a waiver of any right or claim or cause of action which by law Employee is not permitted to waive.

(d)     No Previously Commenced Actions.  Employee acknowledges and agrees that he has not, with respect to any transaction or state of facts existing prior to the date hereof, filed any complaints, charges or lawsuits against any School Released Party with any governmental agency, court or tribunal, and School acknowledges and agrees that it has not, with respect to any transaction or state of facts existing prior to the date hereof, filed any complaints, charges or lawsuits against Employee with any governmental agency, court or tribunal.  Employee understands that nothing in this Agreement affects the rights and responsibilities of the Equal Employment Opportunity Commission, the National Labor Relations Board, or any state or local equivalent administrative agency to enforce federal laws or interferes with the rights of Employee or others to file a charge or participate in an investigation or proceeding conducted by those agencies.  However, if any agency or any other person or entity brings any charge, complaint, action or proceeding related in any way to Employee's employment with the School or otherwise on Employee's behalf, Employee agrees that she will not seek or accept any benefit, remedy, or other personal relief, including but not limited to an award of monetary damages, in connection therewith and she shall not seek, accept, or be entitled to any monetary relief as a member of a class or group or as a representative on behalf of others.

(e)     Release Freely Given.  The Parties acknowledge that this Agreement has been entered into freely, knowingly, and voluntarily and not as a result of coercion, duress or undue influence.  The Parties acknowledge that they have had ample time and opportunity to consider the terms of this Agreement and to discuss it with an attorney of his choosing prior to signing this Agreement.

(f)     Release of Existing Claims.  The Parties acknowledge that the releases of claims set forth in this Section 2 relate only to claims which exist as of the date of this Agreement.

(g)     No Admissions.  The parties agree that the above-mentioned considerations, and all other undertakings by the parties, are not to be construed as admissions of wrongdoing or liability on the part of either party under any statute or otherwise, but that on the contrary, any such wrongdoing or liability is expressly denied by them.

Section 3.     Non-Disparagement; Confidentiality.

(a)     Non-Disparagement.  From and after the Separation Date, Employee and School shall not make or publish any disparaging statements (whether written or oral) regarding the Employee or the School, its staff, administration or Board of Trustees, or any member thereof.  Employee agrees that she shall not disclose the existence or content of this Agreement with any person, other than legal counsel to Employee, tax professionals advising Employee, or

members of Employee's immediate family, each of whom shall agree to be bound by this provision. The School also agrees not to disclose this Agreement to any person outside the organization and consulting professionals.

(b)　　　　Confidential School Information.

(i)　　　　*Confidential Information*.  Employee acknowledges that in working for School, Employee has been exposed to School's proprietary and confidential information, whether in electronic, verbal or written format "Confidential School Information").  Such information includes, but is not limited to, School's (1) personnel files, compensation schedules and benefits policies, (2) student files, (3) data, plans and projections for recruiting staff and students, (4) donor lists and donor prospect lists, (5) vendor and consultant lists and contract terms, (6) research, inventions, techniques, methodologies, adaptations and modifications, knowledge, data, processes, software, algorithms, formulae and compositions, including without limitation grant applications, (7) curricular and training materials developed by the School's employees, (8) information concerning facility prospects and strategy, and (9) any other confidential information which Employee learned by virtue of being employed by School which relates to School, its staff or students.

(ii)　　　　*Non-Disclosure of Information*.  Employee acknowledges that in serving School, Employee has made use of, obtained, and added to the Confidential School Information. Employee agrees that, notwithstanding the termination of Employee's employment with School, Employee will not, for any purpose, copy or make use of any Confidential School Information for Employee's own benefit or the benefit of others, except as authorized in writing by an authorized representative of School or to the extent required to perform Employee's duties for School. Employee will not divulge, disclose, permit to be disclosed, or make available to anyone not an authorized employee or representative of School any Confidential School Information, except as authorized in writing by an authorized representative of School or to the extent required to perform Employee's duties for School.  Employee acknowledges and agrees that the unauthorized taking, disclosure, or use of Confidential School Information may subject Employee claims for damages or other legal action.  Employee's obligations to Confidential School Information shall cease with respect to any particular Confidential School Information when and to the extent that such particular Confidential School Information (i) is or becomes generally available to the public other than as a result of a disclosure by Employee in violation of this Agreement, (ii) was within the Employee's possession prior to his employment by the School and was obtained by Employee from an individual not associate with the School or its founders or (iii) is or becomes available to Employee on a non-confidential basis from a source other than the School or an individual associated with the School, provided that such source is not known by Employee to be bound by a confidentiality agreement with or other contractual, legal or fiduciary obligation of confidentiality to School.

(iii)    *No Removal of Legends*.  Employee shall not alter or remove from any Confidential School Information any proprietary, copyright, trademark or similar legends or titles evidence of the confidential or proprietary nature of the same.

(iv)    *Compelled Disclosure*.  These confidentiality and non-disparagement provisions do not prevent Employee from providing truthful information or testimony in response to a valid and enforceable subpoena, to a governmental agency, or otherwise as required by law; provided that, in the event that Employee becomes legally compelled to disclose any Confidential School Information, Employee shall provide School with immediate notice so that School may seek a protective order or other appropriate remedy and/or waive compliance with the provisions of this Agreement.

(v)    *Obligations Survive This Agreement*.  The obligations imposed by the foregoing provisions concerning confidentiality and non-disclosure shall survive the Separation Date.

(c)    Developed Materials; Retention of Rights.  School shall retain, solely and exclusively, all continued right, title and interest in and to any and all of the Confidential School Information which was conceived, made, developed, produced, used or applied prior to the Separation Date.

(d)    Reasonableness of Restrictions.  EMPLOYEE ACKNOWLEDGES AND AGREES THAT THE RESTRICTIVE COVENANTS CONTAINED IN THIS AGREEMENT (i) ARE NECESSARY FOR THE PROTECTION OF THE SCHOOL, (ii) WILL NOT UNDULY RESTRICT EMPLOYEE'S ABILITY TO EARN A LIVELIHOOD AFTER TERMINATION OF EMPLOYMENT (iii) ARE REASONABLE IN TIME TERRITORY AND SCOPE. BOTH PARTIES AGREE TO MUTUALLY ACT IN GOOD FAITH.

(e)    Remedies.  If Employee fails (or if there is a threat of failure) to comply with any covenants or agreements contained in this Agreement, then in addition to any other remedy provided for at law or in equity, School shall be entitled to injunctive and other equitable relief without the necessity for proving any actual damages including, but not limited to the specific performance of the terms and conditions of this Agreement, and the right and remedy to require Employee to account for and pay over to School all compensation, profits, moneys, accruals, increments or other benefits (collectively "Benefits") derived or received by Employee as the result of any transactions constituting a breach of any of the provisions of this Agreement, and Employee hereby agrees to account for and pay over such Benefits to School. In addition, should Employee be found to have breached any of the provisions of this Agreement, Employee shall be fully responsible for all costs of the enforcement of this Agreement or the collection or pursuit of any remedies, including attorneys' fees and expenses incurred by School.  The remedies hereunder shall be cumulative and not alternative; the election of one remedy for a breach shall not preclude pursuit of other remedies. The real or perceived existence of any

claim or cause of action of Employee against School, whether predicated on this Agreement or some other basis, shall not constitute a defense to the enforcement by School of the restrictions, covenants, and agreements contained herein.

(f) <u>Notification of New Employer</u>.  Employee authorizes School to provide notice of Employee's rights and obligations under this Agreement to Employee's subsequent employer or to any other entity or person to whom Employee provides services. (wants to give preAuthorization upon request)

Section 4. <u>Return of School Property.  Employee represents that, as of her execution of this Agreement, she has returned to the School all equipment, documents (hard copy and electronic), files (hard copy and electronic), business records and/or other property of the School that has been or is in her care, custody, possession or control, including but not limited to any and all electronic files stored on her personal computer, hard drives, external drives, and other devices and information from or regarding the School's donor database.  Employee further represents that, as of her execution of this Agreement, she has not downloaded and has permanently deleted from her personal computers, phones, tablets and hard-drives all electronic documents or electronic mail from all sources that she obtained in conjunction with her employment with the School, and Employee will not take any action that will result in the deletion, disposal, or loss of any documents, files, business records, or information related to the School or her employment.  If after executing this Agreement, Employee discovers any such information or documents, she agrees that she will promptly provide them the School and delete any copies after doing so, without demand from the School.</u>

Section 5. <u>Notices</u>.  Any notice required or desired to be delivered hereunder shall be in writing and shall be delivered personally, by courier service, or by certified mail, return receipt requested, and shall be effective when actually delivered to the Party to whom such notice shall be directed and shall be addressed as follows (or to such other address as the Party entitled to notice shall hereafter designate in accordance with the terms hereof):

<u>If to School</u>:
District of Columbia International School
1400 Main Drive NW
Washington, DC 20012
Attn:  Michael Rosskamm, Executive Director
Email: michael.rosskamm@dcinternationalschool.org

<u>with a copy to</u>:
McGuire Woods LLP
500 East Pratt Street, Suite 1000
Baltimore, MD 21202
Attn:  Alan Sun
Email: asun@mcguirewoods.com

<u>If to Employee</u>:
Nicholas Curwen
5661 3rd Street, NE #230
Washington DC 20011
Email: ncurwen12@gmail.com

Section 6.        <u>Complete Agreement</u>.  This Agreement constitutes the complete agreement of the Parties with respect to the subject matter hereof and shall supersede all agreements between the Parties to the extent they relate in any way to the employment, termination of employment, compensation and Employee benefits of Employee.

Section 7.        <u>Severability</u>.  Each provision hereof and portion thereof is severable, and if one or more provisions hereof or portions thereof are declared invalid, the remaining provisions and portions thereof shall nevertheless remain in full force and effect.  If any provision of this Agreement or portion thereof is so broad, in scope or duration or otherwise, as to be unenforceable, such provision shall be interpreted to be only so broad as is enforceable.

Section 8.        <u>No Waiver</u>.  The failure to enforce at any time any of the provisions of this Agreement or to require at any time performance by another party of any of the provisions hereof shall in no way be construed to be a waiver of such provisions or to affect the validity of this Agreement, or any part hereof, or the right of any Party thereafter to enforce each and every such provision in accordance with the terms of this Agreement.

Section 9.        <u>Counterparts</u>.  This Agreement may be executed in several counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.  The Parties represent that each signatory to this Agreement on his, its or their behalf is authorized to make the promises and commitments herein.

Section 10.        <u>Successors</u>.  This Agreement shall be binding upon any and all successors and assigns of Employee and School.

Section 11.        <u>Third-Party Beneficiary</u>.  Each of School Released Parties shall be a third-party beneficiary with respect to <u>Section 2</u> herein and shall be entitled to enforce the provisions thereof.

Section 12.        <u>Governing Law</u>.  Except for issues or matters as to which federal law is applicable, this Agreement shall be governed by and construed and enforced in accordance

with the laws of the District of Columbia without giving effect to the conflicts of law principles thereof.

Section 13.      <u>Headings</u>.  The captions and headings contained in this Agreement are for convenience only and shall not be construed as a part of the Agreement.

{*S<small>IGNATURES</small> <small>ON</small> P<small>AGES</small> F<small>OLLOWING</small>*}

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first above written.

SCHOOL:

District of Columbia International School

By: *Michael Rosskamm*
     ⎯⎯95950AFA209A4A2...
Name:  Michael Rosskamm
Title:  Executive Director

EMPLOYEE:

*Nicholas Curwen*
⎯⎯F58138B8B8B0488...
Name:  Nicholas Curwen